208 N.J. Super. 496 (1986)
506 A.2d 375
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN SHARP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 1986.
Decided March 5, 1986.
*497 Before Judges BRODY, GAYNOR and BAIME.
Draesel, Sunshine, Atkins and November, attorneys for appellant (Donald L. Minassian, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Mildred Vallerini Spiller, Deputy Attorney General, of counsel).
The opinion of the court was delivered by BAIME, J.A.D.
*498 Defendant appeals from a conviction of possession of a controlled dangerous substance in violation of N.J.S.A. 24:21-20a(1). The sole argument advanced on appeal is that the trial judge erred when he denied defendant's motion to suspend the proceedings and grant supervisory treatment under N.J.S.A. 24:21-27. We disagree and affirm.
We need not recount the facts at length. On November 17, 1982 defendant was arrested by a member of the Hillsdale Police Department. A subsequent search revealed five packets of cocaine amounting to .69 grams. Following his arrest, defendant freely admitted to the police officer that he "was a cocaine dealer." Pursuant to an agreement with the State, defendant entered a plea of guilty to an accusation charging him with possession of a controlled dangerous substance. In return for his plea and his promise of assistance in future investigations, the State agreed not to object to his application for conditional discharge under N.J.S.A. 24:21-27.
It was later discovered, however, that defendant had been admitted into a pretrial intervention program pursuant to R. 3:28 in 1974 following his arrest for possession of a stolen automobile. After successful completion of the program, defendant's charge for that offense had been dismissed. Despite the State's promise not to object to defendant's admission into a supervisory treatment program under N.J.S.A. 24:21-27, the prosecutor argued that the application was barred by N.J.S.A. 2C:43-12g.[1] That provision states that "[s]upervisory treatment, whether under this section or under [N.J.S.A. 24:21-27], may occur only once with respect to any defendant...." The trial judge agreed that defendant's prior enrollment in a pretrial intervention program served to bar him from a conditional *499 discharge under N.J.S.A. 24:21-27. The judge alternatively decided that defendant was not a fit candidate for diversion because his presence in the program would pose a danger to the community. The latter conclusion was predicated upon defendant's failure to rehabilitate himself following completion of the pretrial intervention program in 1974 and reliable evidence presented disclosing aspects of commerciality in his possession of the cocaine.

I
Initially, we are in complete accord with the trial judge's determination that defendant's prior participation in a pretrial intervention program precluded him from applying for suspension of proceedings and conditional discharge. Of course, we recognize that "read literally, N.J.S.A. 2C:43-12g does not [bar] eligibility of an offender who was previously diverted under R. 3:28." State v. Collins, 180 N.J. Super. 190, 205 n. 3 (App.Div. 1981), aff'd 90 N.J. 49 (1982). We further acknowledge that N.J.S.A. 24:21-27b does not expressly prohibit diversion where the applicant has previously participated in a pretrial intervention program. Nevertheless, we are fully convinced that in enacting N.J.S.A. 2C:43-12g our Legislature intended to bar enrollment by anyone previously diverted under the Code of Criminal Justice, the Controlled Dangerous Substances Act or R. 3:28.
We stress that we are not concerned here with any conflict between the Code and our Supreme Court's pretrial intervention guidelines. While we acknowledge that pretrial intervention Guideline 3(g) as it read at the time of the commission of the offense merely inveighed against a second diversion by saying that persons previously enrolled pursuant to R. 3:28 or N.J.S.A. 24:21-27 "should not ordinarily be re-enrolled," Pressler, Current N.J. Court Rules, Comment R. 3:28, Guideline 3(g) (1982), that provision was subsequently modified. It currently creates an absolute bar against re-enrollment. Pressler, *500 Current N.J. Court Rules, Comment R. 3:28 Guideline 3(g) (1986). In any event, defendant's application was for conditional discharge under N.J.S.A. 24:21-27. He did not apply for admission into a pretrial intervention program under R. 3:28.
Stripped to its essentials, the issue here is one of legislative intent. Specifically, we must determine whether the Legislature, by omitting any reference to R. 3:28 in its prohibition against re-enrollment, intended to permit an applicant to be conditionally discharged notwithstanding his prior participation in a pretrial intervention program. We perceive no such legislative design.
The legislative history pertaining to N.J.S.A. 24:21-27 was described in detail by our Supreme Court in State v. Collins, supra, 90 N.J. at 451-455 (1982). There, the Court observed that the Controlled Dangerous Substances Act preceded the Code of Criminal Justice by nine years and provided the only legislatively created program for diversion of those charged with criminal offenses. Id. at 451. The Act permits diversion only with respect to first offenders who are charged with possessory or use type drug offenses and bars conditional discharge of individuals previously accorded treatment under the statutory scheme. N.J.S.A. 24:21-27b. The purpose of the provision permitting supervisory treatment is to counsel, advise and monitor those charged with possessory and use type drug offenses and "to avoid placing the stigma of a criminal conviction on a first offender if that person can be freed from whatever ... involvement he or she may have." State v. Alston, 71 N.J. 1, 6 (1976). The principal thrust of the section is to "give first offenders a chance to make a fresh start...." Ibid.
Pretrial intervention was introduced in New Jersey in 1970 by the Supreme Court's adoption of R. 3:28. The nature and history of pretrial intervention were traced comprehensively in State v. Leonardis, 71 N.J. 85, 92-107 (1976) (Leonardis I). R. 3:28 is designed to provide a broader program of diversion than *501 N.J.S.A. 24:21-27. Diversion under the rule is available to "[a]ny defendant accused of crime" who demonstrates amenability to rehabilitation. R. 3:28, Guideline 2.
Thus, until the Code of Criminal Justice was enacted there were two separate systems for diversion. Despite the obvious potential for conflict, the systems coexisted with few problems. As for legislative input into pretrial intervention, in State v. Leonardis, 73 N.J. 360, 374-375 (1977) (Leonardis II) the Supreme Court held that the Legislature was not foreclosed from enacting measures affecting the substantive aspects of the program. Id. at 374-375. Justice Pashman observed on behalf of the Court that "[i]t is not our desire to inhibit legislative action in this sphere; on the contrary, we welcome it." Ibid.
Responding to this invitation, our Legislature adopted a comprehensive framework for pretrial intervention when it enacted the Code of Criminal Justice. As noted by Judge Botter in State v. Collins, supra, there is some reason to believe that the Legislature "intended to occupy the field." 180 N.J. Super. at 200. The Code provided for programs of supervisory treatment with the approval of the Supreme Court and the consent of assignment judges and prosecutors. N.J.S.A. 2C:43-12i. While the Supreme Court is authorized to promulgate rules dealing with supervisory treatment in accordance with procedures set forth in N.J.S.A. 2C:43-15 to 20, veto power is reserved to the Legislature and the Governor. N.J.S.A. 2C:43-18. The Senate Judiciary Committee Statement annexed to Senate Bill 738, (L. 1978, c. 95), stated in pertinent part that "[t]he Code would place authorization for pretrial intervention programs into our statutes, thus allowing for legislative input into the operation" of this system.
In response, our Supreme Court amended R. 3:28. The rule presently provides that "[e]ach Assignment Judge shall designate a judge or judges to act on all matters pertaining to pretrial intervention programs in the vicinage in accordance *502 with N.J.S.A. 2C:43-12 and -13...." R. 3:28(a) (emphasis added). Other subsections of R. 3:28 were also amended to comport with the statutory scheme. For example, subsection (b) was altered to omit trial court administrators and chief probation officers from the screening process in accordance with N.J.S.A. 2C:43-12i. Subsections (b) and (d) were amended to modify the maximum duration of such programs to comport with the time restrictions set forth in N.J.S.A. 2C:43-13c. In sum, our Supreme Court clearly intended "to substantially conform [R. 3:28] to the pretrial intervention provisions of the Code." State v. Collins, supra, 90 N.J. at 450.
We, thus, conclude that the Supreme Court intended to assimilate pretrial intervention into a single integrated system. It would, therefore, be anomalous to preclude conditional discharge of individuals previously enrolled in a Code authorized pretrial intervention program while permitting such a course by those previously diverted under R. 3:28. Such a construction of the statute would plainly subvert the legislative policy barring re-enrollment. We are convinced that the Code's prohibition against rediversion is applicable irrespective of whether the defendant was previously enrolled in a program authorized by N.J.S.A. 24:21-27, N.J.S.A. 2C:43-12 or R. 3:28.

II
We also conclude that the trial judge did not abuse his discretion in denying conditional discharge assuming that defendant was eligible. N.J.S.A. 24:21-27c(1) states that diversion is not available if "the defendant's continued presence in the community, or in a civil treatment center or program, will... pose a danger to the community." In State v. Sayko, 71 N.J. 8 (1976), our Supreme Court held that a trial judge "has broad discretion, considering all relevant factors and applying the whole person concept, to determine whether [an applicant] is otherwise a fit subject for the statutory program." Id. at 13 *503 (footnote omitted). Cf. State v. Green, 62 N.J. 547, 566-567 (1973).
Here, reliable evidence was produced which reasonably led the judge to conclude that defendant's activities extended beyond the mere possession of a controlled dangerous substance. We note that had defendant been convicted of distributing drugs, he would have been ineligible for diversion. N.J.S.A. 24:21-27c. "Even absent a conviction, it was not inappropriate for the trial judge to take cognizance of the reliable information that had come to the court in the course of these proceedings" disclosing defendant's intent to distribute the drugs found in his possession. State v. Humphreys, 89 N.J. 4, 14 (1982). See also State v. Pickett, 186 N.J. Super. 599, 605-606 (Law Div. 1982); State v. Banks, 157 N.J. Super. 442, 448-449 (Law Div. 1978); State v. DiLuzio, 130 N.J. Super. 222, 230 (Law Div. 1974). We would be short on realism were we to require the trial judge "to wear blinders to avoid consideration of the character of defendant's possession...." State v. Marzolf, 79 N.J. 167, 185 (1979). We perceive no sound basis to disturb the judge's conscientious exercise of the discretion conferred upon him by the statute.
Accordingly, the judgment of conviction is affirmed.
NOTES
[1] Defendant expressly waived any objection he might have had regarding the State's deviation from the plea agreement. The point is not raised in this appeal, and we, thus, have no occasion to address it.